| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Bruce Comly French | DEFENDANTS<br><br>Debt Defense Lawyers, P.A.<br>Expert Settlement Group, Inc.<br>NoteWorld, LLC |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Bruce Comly French     (419) 222-9134<br>P.O. Box 839<br>Lima, OH 45802-0839 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint against debt relief agencies for the recovery of money.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $55,000 |

**Other Relief Sought**
Costs

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>  Lisa Ann Stainbrook | BANKRUPTCY CASE NO.<br>  10-37339 | |
| DISTRICT IN WHICH CASE IS PENDING<br>  Northern District of Ohio | DIVISION OFFICE<br>  Western | NAME OF JUDGE<br>  Mary Ann Whipple |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>    /s/Bruce Comly French | | |
| DATE<br>    4/26/11 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>    Bruce Comly French | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STAINBROOK, LISA ANN, | ) | Related Case No. 10-37339 |
| | ) | |
| | ) | Adversary Proceeding No. |
| Debtor (s) | ) | |
| _____ | ) | Chapter 7 |
| | ) | |
| BRUCE COMLY FRENCH, Solely in his | ) | Hon. Mary Ann Whipple |
| Official Capacity as Trustee and | ) | |
| Not in his Individual Capacity, | ) | |
| P.O. Box 839 | ) | |
| Lima, Ohio 45802-0839, | ) | |
| | ) | |
| | ) | COMPLAINT FOR DAMAGES |
| Plaintiff, | ) | AGAINST DEBT RELIEF AGENCIES |
| | ) | |
| -vs- | ) | |
| | ) | |
| DEBT DEFENSE LAWYERS, P.A. | ) | |
| 101 Plaza Real South, Suite 204 | ) | |
| Boca Raton, Florida 33432, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| EXPERT SETTLEMENT GROUP, INC. | ) | |
| 1714 Southwest 4th Street | ) | |
| Ft. Lauderdale, Florida 33312, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| NOTEWORLD, LLC | ) | |
| 1001 Pacific Avenue, Suite 200 | ) | |
| Tacoma, Washington 98402, | ) | |
| | ) | |
| Defendant(s). | ) | |

_____

Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 1334, and 1335.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

3. Venue is properly placed in this Court pursuant 28 U.S.C. §§ 1408 and 1409.

<u>Parties</u>

4.  Plaintiff Bruce Comly French was appointed and accepted appointment as the Chapter 7
    Trustee in the related bankruptcy case of Lisa Ann Stainbrook (hereinafter "Stainbrook").

5.  Debt Defense Lawyers, P.A. (hereinafter "Debt Defense") of Boca Raton, Florida is a
    business purporting to offer debt relief and debt settlement services, and was previously
    retained by Stainbrook.

6.  Defendant Expert Settlement Group, Inc. (hereinafter "ESG") is a business purporting to
    offer an "Expert Settlement Program," a fully automated system of debt settlement as
    between the client subscriber and the creditor, whose services were previously retained
    by Stainbrook.

7.  ESG uses a third-party service provider to handle the subscription fees solicited called
    NoteWorld LLC (hereinafter "NoteWorld"). NoteWorld is a business purporting to offer
    third-party payment services for debt relief or debt settlement companies. NoteWorld
    holds client funds in escrow for the purposes of payment on debts settled by the third-
    party debt relief company.

<u>Claim I – Misrepresentation Under 11 U.S.C. § 526(a)(3)</u>

8.  Plaintiff realleges the allegations contained in paragraphs (1) through (7) and
    reincorporates them herein.

9.  Upon information and belief, Stainbrook entered into a contractual relationship with ESG
    on June 27, 2010 for the purpose of assistance in the settlement of her personal debts. The
    contract provided that ESG encouraged client debt accounts to go 90-120 days delinquent
    into order to prove financial hardship that would assist ESG in negotiations with
    creditors.

10. Upon information and belief, on June 28, 2010 Stainbrook entered into a contractual
    relationship with NoteWorld for the purpose of third-party payment processing relating to
    the debt settlement services provided by ESG.

11. Upon information and belief, Stainbrook made two payments into a NoteWorld owned account, opened on her behalf by ESG for the purpose of accumulating escrow funds from which ESG could negotiate and use for settlement on Stainbrook's debt accounts. That on July 6, 2010 and August 6, 2010, NoteWorld received payments of $889.84 respectively.

12. Upon information and belief, soon after entering into a contractual relationship with ESG and NoteWorld, Stainbrook sought alternative help in debt settlement providers. Stainbrook attempted to cancel the contract with ESG and NoteWorld and requested a refund from both ESG and NoteWorld.

13. Upon information and belief, the contract entered into by Stainbrook and Debt Defense, the "Contract to Employ/Representation Agreement," misrepresented the contractual relationship that Debt Defense intended to create.

14. That on August 19, 2010 Stainbrook electronically signed the "Contract to Employ/Representation Agreement" with Debt Defense. Stainbrook also signed a client "Limited Power of Attorney" that provided Debt Defense with the power to represent Stainbrook in the negotiation of debt settlement as well as provided for permission to release this document to creditors, credit-reporting agencies, and third parties who are involved with credit issues. Stainbrook also signed an electronic payment authorization providing bank account information.

15. Upon information and belief, Debt Defense advertised its services as providing debt settlement negotiation for persons with substantial amounts of debt.

16. Upon information and belief, Debt Defense misrepresented the services it would provide to Stainbrook both directly and indirectly.

17. Upon information and belief, Debt Defense required credit account and bank account information from Stainbrook and made withdrawals of funds from her bank account in order to enter Stainbrook's debts into the debt settlement program.

18. Upon information and belief, Stainbrook compiled a list of creditors and balances on each account intended for entry into the debt settlement program. That Stainbrook transmitted this list to Debt Defense by facsimile on August 19, 2010, directed to Mr. Mike Woods (hereinafter "Woods"), a purported agent of Debt Defense. Stainbrook included in this fax three creditor letters requesting payment under the threat of legal action.

19. Upon information and belief, Debt Defense directly represented that it would be active in negotiations with creditors but that Debt Defense could make "no set guaranteed settlement rate" with those creditors.

20. Upon information and belief, Debt Defense made no contact with any creditor provided to them by Stainbrook.

21. Upon information and belief, Debt Defense did not actively negotiate with all of Stainbrook's creditors. That on September 6, 2010 Stainbrook contacted Woods by facsimile stating that Stainbrook made several attempts to contact Debt Defense by phone but no one answered, instead a pre-recorded statement answered saying that all persons were assisting other callers. Mr. Woods, was informed that Stainbrook continued to be harassed by creditors and that the creditors had not received cease and desist letters or any power of attorney documents.

22. Upon information and belief, that on September 7, 2010, Stainbrook transmitted a letter via facsimile to Woods regarding continued creditor harassment by telephone and postal mail. This letter contained specific information relating to the creditor harassment in the manner of named persons calling, the time and date of calls, the place the calls were made and the phone numbers from which the calls were made to Stainbrook's home and place of business.

23. Upon information and belief, that on October 1, 2010, Debt Defense sent a letter to Stainbrook providing a bill of services provided to Stainbrook at that time. This letter contained a breakdown of dates and services rendered, claiming that letters of

representation were transmitted to Stainbrook's creditors on August 19, 2010. This letter

provided that on August 27, 2010 Debt Defense made contact to Stainbrook's creditors.

24. Upon information and belief, that on October 7, 2010 Stainbrook transmitted by facsimile

to Woods letters received by Stainbrook from creditors claiming these creditors would

initiate suit against Stainbrook.

25. The fee structure of Debt Defense demonstrates implicitly that Debt Defense had little

intention of making settlement on any debts, the service for which all fees were solicited

from Strainbrook. "Exhibit A – Full Fee Payment Schedule" of the "Contract to

Employ/Representation Agreement" provides a fee structure under which $19,108.25 in

attorney's fees is accumulated before $22,929.90 is deposited into an escrow account

from which Debt Defense then utilizes to attempt settlement with Stainbrook's creditors.

The fee structure that awards attorney's fees to Debt Defense is a percentage based upon

the amount of debt the client enters into debt settlement program, thus, larger amounts of

debt represent larger fees to be collected by Debt Defense.

26. Upon information and belief, Debt Defense charged Stainbrook $19.99 per month a non-

refundable processing fee.

27. Upon information and belief, Stainbrook paid Debt Defense a total of $1,791.56.

28. Upon information and belief, Debt Defense's fees charged to Stainbrook were grossly

excessive.

29. Upon information and belief, the fees charged were based upon the implicit and direct

misrepresentation that Debt Defense would be active in the negotiation to eventual

settlement all of the debts that Stainbrook entered into the program.

30. 11 U.S.C. § 526 proscribes such predatory practices based on direct and indirect

misrepresentations to debtors who file claims under title 11.

31. 11 U.S.C. § 526 provides that a debt relief agency shall be liable to a debtor to whom it has made material misrepresentations concerning its services and the amount of fees charged.

Claim II – Failure to Make Required Disclosures Pursuant to 11 U.S.C. § 528

32. Upon information and belief, the contract provided by Debt Defense to Stainbrook failed to disclose clearly and conspicuously that bankruptcy assistance may be involved in the relief provided by Debt Defense in the contemplation of the parties.

33. Upon information and belief, the contract provided by Debt Defense to Stainbrook did not disclose clearly and conspicuously "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code" or a substantially similar statement.

34. Upon information and belief, the contract provided by ESG to Stainbrook did not disclose clearly and conspicuously that bankruptcy assistance may be involved in the relief provided by ESG.

35. Upon information and belief, the contract provided by ESG to Stainbrook did not disclose clearly and conspicuously "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code" or a substantially similar statement.

36. 11 U.S.C. § 528(a)(3) provides that a debt relief agency shall clearly and conspicuously disclose that services or benefits provided are associated with bankruptcy relief under title 11.

37. 11 U.S.C. § 528(a)(4) provides that a debt relief agency shall clearly and conspicuously use the following statement "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code" or a substantially similar statement.

38. 11 U.S.C. § 526(c)(1) provides that any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.

## Claim III – Procedural Unconscionability

39. Debt Defense's contract for services to Stainbrook provides that after being enrolled in the program for 48 months monthly payments in the amount of $895.78 will contribute $22,929.90 to an escrow account from which Debt Defense will make settlements on Stainbrook's debts on her behalf.

40. Upon information and belief, of the monthly payments, 100% is allocated to processing and attorney's fees upon the first payment. Subsequent monthly payments are allocated by a decreasing percentage of the monthly payments whereby processing and attorney's fees are satisfied first before the client's escrow account is filled. The requirement that the monthly payments be allocated first to attorney fees and processing fees amounts to a burdensome contract provision for debtors seeking immediate debt relief under the services advertised by Debt Defense.

41. Debt Defense's contract for services to Stainbrook is procedurally unconscionable by requiring substantial amounts of money to be paid well in advance of services rendered, which unreasonably favors Debt Defense over the debtor who is already under financial difficulty.

## Claim IV – Substantive Unconscionability

42. Debt Defense's contract for services to Stainbrook is substantively unconscionable by unreasonable allocation of the risks associated with entering into the debt relief program to the debtor who is already under financial difficulty.

43. No debt settlement, as advertised, occurs until the client escrow account reaches an amount deemed sufficient from which Debt Defense may make settlement offers.

44. As such, Debt Defense's "Contract for Employ/Representation Agreement" is illusory in its promise to achieve settlement on the debts entered into the program by the client.

45. Debt Defense's "Contract for Employ/Representation Agreement" operates as "unfair surprise" in that the services advertised are directed to individuals already under the

strain of substantial debts and that by entering into the debt settlement program for relief, the debt relief provided does not occur immediately under the contract provisions but takes substantial time to accrue escrowed funds sufficient to pay the client's debts as they are presently due.

### Claim V – Unjust Enrichment

46. Debt Defense received grossly excessive compensation from Stainbrook, who was struggling financially, while providing no material benefit to Stainbrook.

47. Debt Defense was unjustly enriched by the collection of fees it made from Stainbrook's bank account.

### Claim VI – Common Law Fraudulent Misrepresentation

48. Defendant's misrepresentations give rise to a claim under Common Law Fraudulent Misrepresentation.

49. The systematic nature of defendant's misrepresentations illustrate defendant's reckless disregard for the actual proprietary interests of the debtor and should give rise to exemplary damages under this claim.

50. In order to punish and discourage the defendant from such misrepresentations defendant should be held liable for exemplary damages.

### Claim VII – Conversion of Funds

51. Plaintiff realleges the allegations contained in paragraphs (1) through (7), and (9) through (13).

52. Upon information and belief, that Defendant NoteWorld continued to withhold Stainbrook's funds despite her cancellation of the contractual agreement with ESG and NoteWorld.

53. Upon information and belief, that on September 24, 2010, Stainbrook made telephone contact with NoteWorld and made demand for a refund of her funds.

54. Upon information and belief, that on October 5, 2010, Stainbrook made telephone contact with NoteWorld and made demand for a refund of her funds. That the agent she spoke to claimed a third party, CityNet, was the proper business to contact for a refund.

55. Upon information and belief, that on October 12, 2010, Stainbrook made telephone contact with NoteWorld and made a demand for a refund of her funds. That the agent she spoke with claimed a refund in the amount of $1,661.68 was to be processed within 3-5 business days.

56. Upon information and belief, that on October 19, 2010, Stainbrook made telephone contact with NoteWorld to confirm the status of her refund. That the agent she spoke to directed her to FBL & Associates in order to obtain a refund.

57. Upon information and belief, that on October 25, 2010, Stainbrook made telephone contact with NoteWorld to demand a refund of her funds. That the agent she spoke to directed her again to CityNet.

58. The systematic refusal by NoteWorld to comply with Stainbrook's continued demands for a refund of her funds amounted to conversion.

<u>Prayer for Relief</u>

WHEREFORE, for the reasons herein stated, Plaintiff respectfully requests that this Court enter judgment on the complaint alleged herein in the following manner:

A. Awarding judgment for Plaintiff, under 11 U.S.C. § 526, of all funds paid to the debt relief agency, Debt Defense, in the amount of $1791.56; or in the alternative,

B. Awarding judgment Plaintiff in the amount of $1791.56 because Debt Defense was unjustly enriched in its collection of that amount;

C. Awarding judgment Plaintiff in the amount of $1,661.68, representing the funds converted by Defendant NoteWorld;

D. Awarding interest on accounts at a rate of 10% for the entire balance of $76,433.00, representing the debt entered into the debt settlement program;

E. Awarding pain and suffering for the continued creditor harassment, at a rate of $50 per day, over the entire period of enrollment;

F. Awarding $25,000 in compensatory and exemplary damages for the defendant's systematic fraudulent conduct;

G. Awarding reasonable attorney's fees and costs to the Plaintiff;

H. Awarding whatever relief this Court deems is just and proper.


Respectfully submitted,

/s/Bruce Comly French
Bruce Comly French
Bar Number 0005298
Trustee in Bankruptcy
P.O. Box 839
Lima, OH 45802-0839
(419) 222-9134
FAX: (419) 222-9437
E-mail: *b-french@onu.edu*

/s/Sarah Elizabeth Gillis
Sarah Elizabeth Gillis
Legal Intern
211 S. Main St. #3
Ada, OH 45810
(401) 829-2965
E-mail: s-gillis@onu.edu